IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MERITAGE HOMEOWNERS' ASSOCIATION, | Case No. 6:16-cv-00300-AA<br>**OPINION AND ORDER** |
| Plaintiff, | |
| v. | |
| BANK OF NEW YORK MELLON, | |
| Defendant. | |

---

BANK OF NEW YORK MELLON,

    Third-Party Plaintiff,

v.

KURT FREITAG,

    Third-Party Defendant.

---

AIKEN, Judge:

This dispute centers on a planned community on the Oregon Coast, Meritage at Little Creek, in which defendant Bank of New York Mellon ("BNYM") owns a unit. Plaintiff Meritage Homeowners' Association ("Meritage") filed this action, alleging that defendant had failed to pay dues, assessments, fees, and interest associated with that unit. Defendant responded with counterclaims against Meritage and claims against third-party defendant Kurt Freitag ("Freitag"), alleging that Meritage failed in its duty to maintain common property and that Freitag breached his fiduciary duty to Meritage's members in his management of the homeowners' association ("HOA"). BNYM now seeks a preliminary injunction preventing Freitag from taking any actions on behalf of Meritage during the pendency of this lawsuit. Meritage's attorneys also seek a stay of all proceedings in this case pending the appointment of a receiver or election of a new Board of Directors to administer Meritage. I heard oral argument on the motions on April 30, 2018. For the reasons set forth below, both motions are granted.

## BACKGROUND

The facts in this case have been recounted at length in my previous opinions and I will not repeat them here.[1] On April 13, 2018, I issued an opinion and order ruling on the parties' cross-motions for summary judgment. In that order, I held that "Freitag . . . lacked legal authority to act on behalf of Meritage after June 5, 2004," the date on which the HOA's governing documents required turnover from Freitag (the developer and declarant under those documents) to Meritage's owner-members. *Meritage Homeowners' Ass'n v. Bank of N.Y. Mellon*, 2018 WL 1787183 at *21. Due to that absence of authority, I denied Meritage's motion

---

[1] For a thorough summary of the factual background relevant to this case, see *Meritage Homeowners' Ass'n v. Bank of New York Mellon*, 2018 WL 1787183, *1–4 (D. Or. Apr. 13, 2018), *Meritage Homeowners' Ass'n v. Watt*, 2017 WL 5615165, *1– 3 (D. Or. Nov. 20, 2017), and *Bank of New York Mellon v. Watt*, 2015 WL 1879680, *1–3 (D. Or. Apr. 22, 2015).

for summary judgment regarding BNYM's liability for dues, assessments, and attorney's fees. *Id.* at *15–16.

The day the summary judgment opinion issued, Freitag sent the first of a series of e-mails[2] to a subgroup[3] of Meritage owner-members. In that e-mail, titled "TROUBLING NEWS," Freitag summarized the summary judgment order as holding that "Big Fish Partners and I as designate have not had any authority to run the HOA since 2004" and "[a]s such, [BNYM] is not obliged to pay any dues, fix its windows, etc., unless and until it is legitimately directed to by an appropriate authority[.]" Gary Fisher Decl. Ex A at 2–3. The next day, April 14, Freitag sent an e-mail to the same group asking them to give him their proxies in order to "maintain the status quo" by voting Freitag into a position managing the HOA. *Id.* at 1. Freitag followed up with another e-mail on April 15 advocating for the "status quo plan" and opining that "us[ing] the occasion to simply organize at long last the HOA and take over the litigation—it is theoretically possible . . . just not a practical option." Gary Fisher Decl. Ex. B at 1. That e-mail also explained that "[o]ver the next few weeks, at least, you can expect to see no change in the administration of the HOA" and stated that "the pending court ruling is no inhibition to carrying on the ordinary business of the HOA exactly as it has been conducted for the past, oh, 15 years or so." *Id.* Freitag further opined that the summary judgment ruling "is not an enforceable order or judgment" and that, until certain "ministerial steps" were taken to make the

---

[2] The e-mails were initially submitted as exhibits to the declaration of Brendan Herbert, one of BNYM's attorneys; Herbert stated that the e-mails had been forwarded to him by "one of the other unit owners at Meritage." Herbert Decl. ¶¶ 2–4. Mr. Herbert's declaration also included statements from an unnamed unit owner. After Freitag challenged those statements as inadmissible hearsay, BNYM submitted declarations from four of Meritage's owner-members (Gary Fisher, Cheryl Fisher, Gary Dhaemers, and Bahram Adrangi) with the e-mails as exhibits.

[3] Freitag appears to have e-mailed all individuals who own units. He did not include BNYM or other financial institutions who own units on the messages.

ruling "actionable, . . . we are not obliged to act in accordance with the ruling." *Id.* at 2. Freitag sent two more e-mails, on April 16 and 17, informing the subgroup of owner-members that Meritage's attorneys could be required to withdraw from this case for ethical reasons arising from the summary judgment ruling.

On April 18, BNYM filed a motion for a temporary restraining order and preliminary injunction against Freitag. BNYM sought to stop Freitag from taking any actions in the capacity of administrator of Meritage or on Meritage's behalf. BNYM provided this Court with copies of the e-mails described above and argued that an injunction was necessary to prevent Freitag from continuing to operate the HOA. On April 19, Mark Hoyt, counsel for Meritage, filed a motion for a stay of proceedings until legal authority to operate Meritage is established through the appointment of a receiver or election of a Board of Directors. Hoyt argued that, in view of the ruling that Freitag lacks authority to make decisions for Meritage, his client is currently unable to provide direction regarding how to proceed. Also on April 19, I entered a temporary restraining order, enjoining Freitag from:

1. Taking any action on behalf of Meritage;

2. Retaining counsel to represent Meritage;

3. Soliciting, negotiating, or entering into any agreement with any party that would bind Meritage to any legal obligations, create a new business relationship, or incur any further costs for which Meritage would be responsible;

4. Accessing or liquidating any bank accounts, reserve funds, or other property owned by Meritage or in which Meritage has a beneficial interest;

5. Attempting to collect or enforce any debts alleged to be owed by Meritage or its members;

6. Imposing fines or fees, or engaging in any collection or enforcement actions against members of Meritage;

7. Placing any liens on property owned by Meritage or members of Meritage;

8. Communicating with members of Meritage in the capacity of one in control of Meritage; and

9. Destroying or failing to preserve any documentation (electronic or otherwise) concerning Meritage's operations, business relationships, financial affairs, maintenance, and legal affairs.

Temporary Restraining Order (doc. 123) at 2–3.

Freitag continued to send e-mails advocating for the status quo plan (*i.e.*, taking action to formally make him administrative head of Meritage) to the subgroup of owner-members even after the temporary restraining order issued. On April 26, Freitag forwarded to the subgroup of owner-members a report prepared for Meritage by an economist in connection with this litigation. The purpose of that report was to quantify damages to other unit owners caused by "the failure of [BNYM] to replace windows on its unit and pay dues[.]" Gary Fisher Decl. Ex. F at 1. Also on April 26, Freitag sent a second e-mail regarding a judgment Meritage had against a realtor and lamenting that he was "hamstrung in now in pursuing, as we have been doing diligently over the past many years, everything that is owed us, no exceptions, no excuses, everyone obligated just the same." Gary Fisher Decl. Ex. G at 2.

On April 27, Freitag sent an e-mail that began with the disclaimer that he was e-mailing in his capacity as "[a] lot and unit owner in the development;" "[t]he declarant/developer[;]" and "[t]rustee of the PSRG Profit Sharing Plan, the lender to the HOA." Gary Fisher Decl Ex. H at 1. Freitag provided an explanation about the definition of a receiver and how receivership works; a statement regarding his belief that he has an ongoing fiduciary duty to Meritage's owner-members; a summary of his "substantial rights under Oregon law" as the declarant (including a reference to "super votes"), asserting that "out of a total of 15 votes, the declarant controls AT LEAST 6 already, where 8 total votes is a majority and has effectively complete

authority over HOA operations"; and some "[b]asic financial information" about the HOA including that its "accounts payable are currently about $500,000[,]" which in Freitag's estimation meant that if BNYM prevails in this lawsuit, it "would make your units unsaleable for any foreseeable time." *Id.* at 2–3. Freitag also referred to a $1 million "demand loan" to the HOA that the lender (PSRG Trust, for which Freitag is trustee) could call "due at any time" and noting that if PSRG Trust were to foreclose on certain units, it (by which he meant he) would gain seven additional votes. *Id.* Finally, Freitag referenced the lawsuit the unit owners filed seven years ago attempting to gain control of Meritage. He stated that he "warn[ed]" those unit owners at the time that "they were embarking on a long and very, very costly trip from which some would not be returning." *Id.* at 3. Freitag reported that the "outcome" of the prior litigation was "at LEAST $2-million essentially down the drain, . . . eight owners losing their homes, four bankruptcies, at least one divorce, many other personal relationships shattered beyond repair." *Id.* He ended by urging the recipients of the e-mail to "consider . . . carefully" whether they wanted to repeat that experience and to give his "plan your diligent consideration." *Id.* at 3–4.

In a declaration submitted in support of his response to BNYM's motion for a preliminary injunction, Freitag states that he owns several units with Meritage at Little Creek and that he remains the declarant under Meritage's bylaws. He expresses his "understanding that, as the declarant and Director 'in fact,' I have fiduciary obligations to see to the day-to-day management of the HOA including paying any bills for services, utilities and the like." Freitag Decl. ¶ 6, Apr. 24, 2018. He further asserts that he "understand[s] the court's order" that he lacks authority "to bind the HOA to any contracts, negotiations, deals or lawsuits." Freitag Decl. ¶ 5, April 24, 2018.

In a reply in support of its motion for a preliminary injunction, BNYM submitted declarations from four Meritage owner-members. In those declarations, owner-members Gary Fisher, Cheryl Fisher, and Gary Dhaemers state they "have long been very worried about Mr. Freitag's mismanagement of the HOA[,]" including "his relentless pursuit of litigation, accumulation of large attorney fee bills, and his aggressive tactics of assessing dues and penalties against unit owners." Gary Fisher Decl. ¶ 10; Cheryl Fisher Decl. ¶ 10; Dhaemers Decl. ¶ 10. They further assert that although they "have long hoped that control of the HOA could be taken away from Mr. Freitag[,]" they have been "reluctant to speak out . . . for fear of retaliation, since we have seen how he has treated other owners who have tried to stand up to him." Gary Fisher Decl. ¶ 11; Cheryl Fisher Decl. ¶ 11; Dhaemers Decl. ¶ 11. They express concern that Freitag "will resort to a financial scorched earth policy as a reaction to his removal from the future of Meritage" including demanding immediate payment of the "'supposed' million dollar loan he has provided Meritage[.]" Gary Fisher Decl. ¶ 12; Cheryl Fisher Decl. ¶ 12; Dhaemers Decl. ¶ 12. The Fishers also report that on April 25, Cheryl, who is 73, had to go to the emergency room for high blood pressure, a health problem she usually does not have and which the Fishers attribute to stress from Freitag's "continued threats in his recent e-mails[.]" Gary Fisher Decl. ¶ 13; Cheryl Fisher Decl. ¶ 13. Member-owner Bahram Adrangi states that the previous attempt "to form a properly elected HOA board ended in litigation and resulted in financial catastrophe for homeowners causing many to go bankrupt and/or lose their homes." Adrangi Decl. ¶ 4. He further states that he is concerned about "potential financial burdens" such as the loan Freitag referred to, which Adrangi reports was not referenced in Meritage's most recent annual budget. Adrangi Decl. ¶ 5. All four member-owners express their strong support for appointment of a neutral receiver as a transitional step to the election of a permanent Board of Directors.

## STANDARDS

To obtain a preliminary injunction in federal court, the party seeking the injunction generally must establish that (1) it is likely to succeed on the merits; (2) it will suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat'l Resources Def. Council*, 555 U.S. 7, 21 (2008). The Ninth Circuit also employs a "sliding scale" variant of that test. *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the sliding scale variant, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing that likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Id.* (internal quotation marks omitted) (emphasis in original).

Courts considering whether to stay a final judgment apply a four-factor test that "substantial[ly] overlaps" with the four-factor preliminary injunction test. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Before final judgment, however, federal courts have broad inherent authority to stay proceedings in cases before them. *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936).

## DISCUSSION

I.   *Motion for Preliminary Injunction*

Having carefully reviewed the record, I find that all four factors weigh in favor of extending the temporary restraining order into a preliminary injunction in this case.

Success in the merits is, in this particular case, the easiest factor to evaluate. In the summary judgment order, I ruled that BNYM is entitled to summary judgment on the issue of whether Freitag had legal authority to make decisions on behalf of Meritage when he levied dues

and assessments against BNYM and incurred litigation expenses contending that he contends BNYM is liable to pay. BNYM has on the relevant point—Freitag's authority—done more than show likely success on the merits: it has already won on the merits. Essentially, BNYM seeks a preliminary injunction to give force to the point on which it won summary judgment. The balance of hardships and public interest factors also weigh in favor of a preliminary injunction. It is unclear how Freitag will be harmed if he is prevented from exercising legal authority he does not possess, whereas it would plainly be inequitable to permit Freitag to continue running Meritage—in his own words, "exactly as it has been conducted for the past, oh, 15 years or so"—when he lacks legal authority to do so. Gary Fisher Decl. Ex. B at 1. Finally, given the scarcely believable amount of money already expended on this lawsuit and other litigation related to this dispute, it is clearly in the public interest to hit "pause" to give Meritage's owner-members the opportunity to determine who should be in charge of making decisions for the HOA going forward.

The remaining factor, irreparable harm, is the factor that requires the closest examination. Indeed, irreparable harm is the only one of the four *Winter* factors Freitag addressed in his response in opposition to the preliminary injunction. Freitag contends that the available evidence is insufficient to show it is likely that he will fail to comply with this Court's directives, will expose Meritage to new financial obligations, or will otherwise take actions that expose BNYM and its fellow member-owners to irreparable harm.

Having carefully reviewed the available evidence, I find that BNYM has made the requisite showing of irreparable harm here. Freitag's statements that he is not obliged to act in accordance with the rulings of this Court and characterization of the summary judgment order as "pending" are more than sufficient evidence that he is likely at best to comply with the letter of

Page 9 – OPINION AND ORDER

my rulings in a hypertechnical manner and at to worst flout the rulings altogether, while in either case continuing to exercise continuing administrative control over Meritage. That conclusion is underscored by his e-mails to member-owners *after* the temporary restraining order was in place. Freitag is correct, of course, that he is permitted to contact his fellow unit owners in his capacity as a unit owner. But that is not the substance of his messages; read as a whole, the messages plainly violate my directive that Freitag refrain from communicating with Meritage members in the capacity of one in control of Meritage. They imply that the summary judgment ruling is a technicality and that, for all practical purposes, Freitag remains in charge.

Freitag also violated the temporary restraining order's prohibition on attempting to collect or enforce debts alleged to be owed by Meritage or its members. He carefully worded his discussion of the $1 million loan in hypothetical terms, but to any reasonable person, the message reads as a threat. That threat is in direct contravention of the terms of the temporary restraining order.

Those messages—that Freitag is still really the person in charge, and that he is in a position to call for immediate repayment of a $1 million loan—creates a likelihood of irreparable harm to BNYM. By writing to the owner-members in this capacity, he is—by virtue of a combination of threats to call in large debts, reference to past acrimonious conduct, and dire predictions about what will happen if the owner-members do not support his plan—exerting impermissible influence over the process of selecting the person or persons who will be in administrative control of Meritage going forward. The declarations submitted by BNYM clearly support the conclusion that Freitag has been willing to take extraordinary steps in the past to maintain control over Meritage. It is therefore critical that Freitag be barred from holding himself out as possessing more authority than he has—even by implication. As a unit owner, he

remains a voting member of Meritage. He may even, as he suggests, have access to "super votes" under the terms of the Declaration and Bylaws. But he cannot, without violating Court orders and exposing himself to sanctions, continue to communicate with member-owners in a way that implies he is still really the one in control of the HOA. Freitag has an ongoing fiduciary duty to act in the best interests of Meritage when he takes any action within the scope of his authority. But that fiduciary duty cannot and does not override the requirement that he comply with the terms of this Court's orders, which substantially limit his power to act on Meritage's behalf.

I am also mindful of the fact that no person has authority to speak on behalf of Meritage and so Meritage has taken no position on BNYM's motion. There is substantial evidence in the record that Meritage is likely to suffer irreparable harm in the absence of an injunction. Freitag's e-mails include a not-so-veiled threat that PSRG Trust could foreclose on several units in an attempt to collect the $1 million loan; foreclosure, which causes not only monetary harm but loss of unique real property, would constitute irreparable harm. The unit-owners' declarations also support the conclusion that Freitag has aggressively depleted HOA resources in the past when he has felt threatened; if he continues to incur obligations on Meritage's behalf, he could render the HOA insolvent, another irreparable harm. As explained above, BNYM has met the irreparable harm standard on its own. But the likelihood of irreparable harm to Meritage in combination with Meritage's present inability to take a position on the preliminary injunction further underscore the need for injunctive relief.

The temporary restraining order will be extended into a preliminary injunction. However, its terms must be modified somewhat to account for some practical issues raised by the parties at oral argument. Specifically, until a receiver or some other authority is duly appointed

to run Meritage, Freitag remains the *de facto* administrator under Oregon law. He therefore needs to be able to pay bills in the normal course, collect and deposit rent checks on the units Meritage owns, conduct repairs and deal with run-of-the-mill tenancy issues. Under the terms of the preliminary injunction, Freitag retains the limited authority to conduct the day-to-day business of Meritage in the narrow categories outlined above, pending appointment of other administrative authority over Meritage. However, Freitag is directed to notify BNYM by e-mail *before* paying any bills, making repairs, or dealing with tenant issues and *promptly after* he cashes rent checks. The e-mail communications should include copies of bills, copies of checks, and any other relevant documentation. BNYM is then directed to promptly circulate Freitag's messages to all other member-owners of Meritage. When the matter is truly routine, BNYM is directed to promptly give Freitag consent to perform the necessary action. If the parties cannot agree on a particular issue, they should immediately seek the Court's assistance in resolving the matter. Every effort is to be made to ensure that there is no substantial change in or interference with the experience of the rental tenants at Meritage at Little Creek as a result of this lawsuit.

Finally, if Freitag sends any further communications to member-owners that state or imply that he retains administrative control over Meritage for any purpose other than the day-to-day operations outlined above, BNYM is directed to bring the communication to my attention immediately.

II.   *Motion for Stay*

Meritage is the plaintiff in this action. As Mr. Hoyt correctly pointed out in his motion for a stay and at oral argument, there is presently no person who is able to give Meritage's lawyers guidance about how to proceed in any matter related to this lawsuit. Accordingly, this matter is stayed until a person or group of persons is lawfully vested with the authority to

manage Meritage's affairs and make legal decisions on its behalf through the appointment of a receiver, the election of a Board of Directors, or some other lawful transfer of administrative power. The stay shall remain in place for a reasonable time after the establishment of said legal authority so that Sherman Sherman Johnnie & Hoyt, LLP, can evaluate its ethical obligations and determine the appropriate course for proceeding in this case.

III. *Remaining Matters*

In his response in opposition to the temporary restraining order, Freitag asks me to take this opportunity to explain the effect of the ruling that mandatory turnover was triggered in 2004 and Freitag lacked authority to retain control of Meritage after that point. I agree with Freitag that there is much to be sorted out with respect to the effect of the failure to turn over control of Meritage to its members in 2004. Bearing in mind that we must walk before we run, at this point I will say only that my ruling does not automatically invalidate every legal decision Freitag made on behalf of Meritage from 2004 onward, that the § 363 sale to BNYM remains valid, and that BNYM is a titled unit owner and member of Meritage. All other issues, including BNYM's liability for the windows assessment and fees Freitag levied against BNYM on Meritage's behalf, will have to be resolved on a case-by-case basis as the need to make that inquiry arises.

## CONCLUSION

The motion of Sherman Sherman Johnnie & Hoyt, LLP to stay proceedings (doc. 122) is GRANTED. All proceedings except those related to the preliminary injunction and process of appointing a receiver are STAYED in this case until a receiver is appointed or some other individual or group is lawfully vested with the authority to make decisions on Meritage's behalf and Sherman Sherman Johnnie & Hoyt, LLP has had a reasonable time to evaluate its ethical obligations and determine how to proceed.

Page 13 – OPINION AND ORDER

BNYM's motion for a preliminary injunction (doc. 120) is GRANTED. Kurt Freitag is hereby enjoined, during the pendency of this action or until granted leave of the Court, from:

1. Taking any action on behalf of Meritage except those actions specifically enumerated below in the section addressing day-to-day operations of Meritage;

2. Retaining counsel to represent Meritage;

3. Soliciting, negotiating, or entering into any agreement with any party that would bind Meritage to any legal obligations, create a new business relationship, or incur any further costs for which Meritage would be responsible;

4. Accessing or liquidating any bank accounts, reserve funds, or other property owned by Meritage or in which Meritage has a beneficial interest, except as necessary for him to carry out the functions described below in the section addressing day-to-day operations of Meritage;

5. Attempting to collect or enforce any debts alleged to be owed by Meritage or its members;

6. Imposing fines or fees, or engaging in any collection or enforcement actions against members of Meritage;

7. Placing any liens on property owned by Meritage or members of Meritage;

8. Communicating with members of Meritage in the capacity of one in control of Meritage; and

9. Destroying or failing to preserve any documentation (electronic or otherwise) concerning Meritage's operations, business relationships, financial affairs, maintenance, and legal affairs.

Until a receiver is appointed or some other individual or group is lawfully vested with authority to make decisions on behalf of Meritage, however, Freitag retains the authority to conduct the following activities necessary to the day-to-day operation of Meritage.

1. Freitag may pay bills in the normal course. Before making payment, Freitag shall electronically send a copy of any such bill to BNYM, which in turn will circulate the bill to all other owner-members. If the bill is a routine obligation, BNYM shall promptly grant consent for Freitag to make payment.

2. Freitag may collect rent from tenants in units owned by Meritage in the normal course. After depositing each rent payment, Freitag shall electronically send a

copy of any rent check or other record of payment to BNYM, which shall in turn circulate the payment record to the other owner-members.

3. Freitag may make ordinary repairs and deal with other routine issues of tenancy as the need arises. Freitag shall promptly notify BNYM of any expenses associated with such duties before making payment, and BNYM shall in turn circulate the information to the other owner-members. If the matter is routine, BNYM shall promptly grant consent for Freitag to take the necessary action.

Every effort is to be made to ensure that there is no substantial change in or interference with the experience of the tenants at Meritage at Little Creek as a result of this lawsuit. If additional issues with tenants arise that cannot be resolved and are not governed by the terms of this order, the parties shall promptly seek the assistance of the Court to resolve them. BNYM is hereby ordered to inform the Court promptly if Freitag sends any communications to unit-owners that state or imply that he retains administrative control of Meritage except to the limited extent enumerated above. Freitag is hereby informed that if he sends any such communications to member-owners, he places himself at risk of civil contempt sanctions.

IT IS SO ORDERED.

Dated this 1st day of May 2018.

_____
Ann Aiken
United States District Judge