IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MERITAGE HOMEOWNERS'
ASSOCIATION,

    Plaintiff,

v.

BANK OF NEW YORK MELLON,

    Defendant.

Case No. 6:16-cv-00300-AA
**OPINION AND ORDER**

BANK OF NEW YORK MELLON,

    Third-Party Plaintiff,

v.

KURT FREITAG,

    Third-Party Defendant.

Page 1 – OPINION AND ORDER

AIKEN, Judge:

This dispute centers on a planned community on the Oregon Coast, Meritage at Little Creek, in which defendant Bank of New York Mellon ("BNYM") owns a unit. Plaintiff Meritage Homeowners' Association ("Meritage") filed this action, alleging that defendant has failed to pay dues, assessments, fees, and interest associated with that unit. Defendant responded with counterclaims against Meritage and claims against third-party defendant Kurt Freitag ("Freitag"), the developer and Declarant of Meritage at Little Creek, alleging that Meritage breached its duty to maintain common property and that Freitag breached his fiduciary duty to Meritage's members in his management of the homeowners' association ("HOA").

Before me now is BNYM's motion to appoint a receiver pursuant to Federal Rule of Civil Procedure 66. For the reasons set forth below, BNYM's motion is granted.

## BACKGROUND

The facts in this case are familiar to the parties, and I will not repeat them at length here.[1] BNYM has owned a unit in Meritage at Little Creek since August 2015. Beginning in January 2016, Freitag, in his capacity as administrator of Meritage, began sending BNYM invoices for assessments, fines, quarterly dues, and fees. BNYM paid quarterly dues but disputed amounts billed related to (1) expenses prior to the date it took title in August 2015 and (2) replacement of windows in the unit. In October 2017, Freitag asserted that BNYM owed Meritage more than one million dollars.

---

[1] For a thorough overview of the factual and procedural history of this case, see *Meritage Homeowners' Ass'n v. Bank of New York Mellon*, 2018 WL 2021347, *1–3 (D. Or. May 1, 2018); *Meritage Homeowners' Ass'n v. Bank of New York Mellon*, 2018 WL 1787183, *1–4 (D. Or. Apr. 13, 2018); *Meritage Homeowners' Ass'n v. Watt*, 2017 WL 565165, *1–3 (D. Or. Nov. 20, 2017); and *Bank of New York Mellon v. Watt*, 2015 WL 1879680, *1–3 (D. Or. Apr. 22, 2015).

Page 2 – OPINION AND ORDER

On April 13, 2018, I resolved the parties' cross-motions for partial summary judgment. As relevant here, I held that, under the terms of the HOA's governing documents and the Oregon Planned Community Act, Freitag should have turned over control of Meritage to its owners fourteen years ago, in June 2004. *See Meritage Homeowners' Ass'n*, 2018 WL 2021347 at *18–21. On April 19, 2018, I entered a temporary restraining order directing Freitag to stop taking actions in the capacity of a person in charge of Meritage. That same day, Meritage's counsel moved for a stay of proceedings, explaining that, in view of my holding that Freitag lacked legal authority to act on behalf of Meritage, there was no one with authority to make decisions for Meritage and advise the firm how to proceed. On May 1, 2108, I granted the motion for a stay and converted the temporary restraining order against Freitag into a preliminary injunction. The preliminary injunction generally directed Freitag to refrain from taking actions on behalf of Meritage but gave him narrow authority to carry on the day-to-day operations of the HOA until some other entity or group was in a position to take over administrative control.

BNYM now moves for appointment of a receiver to manage Meritage.

## STANDARDS

"Under federal law, appointing a 'receiver is an extraordinary equitable remedy,' which should be applied with caution." *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)). In federal court, a motion to appoint a receiver is governed by Federal Rule of Civil Procedure 66. Factors to consider in determining whether receivership is appropriate include:

> (1) whether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct by [the party opposing appointment]; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to the [party seeking appointment] by denial of the appointment would outweigh injury to the party opposing

appointment; (6) the . . . probable success [of the party seeking appointment] in the action and the possibility of irreparable injury to [its] interest in the property; and . . . (7) whether the . . . interests sought to be protected will in fact be well-served by receivership.

*Canada Life Assurance*, 563 F.3d at 844 (alterations normalized). However, the Ninth Circuit has emphasized that there is not "precise formula" for determining whether a receiver should be appointed. *Id.* at 845. The district court, exercising broad discretion, "may consider a host of relevant factors" and "no one factor is dispositive." *Id.*

## DISCUSSION

I.  *Preliminary Matters*

Both BNYM and Freitag submitted written motions supported by evidence. Because there has been fair notice to all parties and because the record is sufficiently developed, Freitag's request for oral argument is denied and I will resolve the motion without further hearing. *See Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1259–60 (D. Or. 2009) (surveying case law and concluding that an evidentiary hearing is not required before appointing a receiver).

As an initial matter, I note that much of Freitag's motion is devoted to the argument that he retains legal authority to run Meritage. I construe those arguments as a request for reconsideration. Before final judgment is entered, district courts have inherent power to modify their own orders. *See City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001); Fed. R. Civ. P. 54(b). Under the "law of the case" doctrine, however, courts generally decline to *exercise* that inherent authority to "refuse to reopen what has been decided" in a particular action. *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912). As a result, "reconsideration [of interlocutory decisions] is an extraordinary remedy to be employed sparingly." *See, e.g., Burger King Corp. v. Ashland Equities*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). In general, courts

will "reconsider previously decided questions [only when] there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." *Leslie Salt*, 55 F.3d at 1393.

There has been no change in the controlling law here. There also is no newly discovered evidence; although Freitag submits evidence for the first time in support of his opposition to appointment of a receiver, that evidence dates from 2003 and 2006. Freitag has not explained why he did not introduce the evidence in connection with his summary judgment briefing. Moreover, although Freitag's argument that the Declaration should be interpreted differently is not frivolous, it falls far short of showing that my prior decision was "clearly wrong" such that reconsideration is appropriate. *Id.* I therefore decline Freitag's request to reconsider my holding that he has, since June 2004, lacked legal authority to be in control of Meritage.

II. *Consideration of the Rule 66 Factors*

Next, I turn to the factors enumerated by the Ninth Circuit in *Canada Life Assurance*. Those factors overwhelmingly favor appointment of a receiver here. First, because I have already held that Freitag lacks legal authority to be in control of Meritage, I find that it is likely that BNYM has a valid claim. Second, I find that the property is in imminent danger of being concealed, diminished in value, or squandered in the absence of a receiver. Freitag has already made clear that he intends to call due a substantial loan and has made not-so-veiled threats regarding the institution of foreclosure proceedings on several units. Third, I find that legal remedies are inadequate; money damages are not sufficient to deal with the tangled mess the HOA now finds itself in.

Fourth, I find that BNYM is at risk of substantial prejudice in the absence of a neutral receiver. BNYM is entitled to negotiate its alleged liabilities in this lawsuit with an individual or

entity possessing legal authority to run the HOA. By contrast, Freitag will not suffer substantial prejudice if a receiver is appointed. As a unit owner, he retains voting rights and a voice in the process of deciding what will happen to Meritage going forward. Finally, I find that the interests sought to be protected here—specifically, BNYM's interest in having a legally valid authority in control of the HOA while it proceeds in this lawsuit—will, in fact, be protected by the appointment of a neutral receiver.

In this case, special considerations also favor appointment of a receiver. First, Meritage is presently without any individual or entity that can lawfully speak on its behalf. A receiver is therefore particularly justified here, even if only as a short-term temporary transition to a duly-elected Board of Directors. Moreover, I find that a receiver is the best method to protect the interests of *all* unit owners, not just BNYM. It is plain from the record that relations between Freitag and the remaining unit owners are fraught and tense. This lawsuit is the most recent in a series of bitter disputes. In Freitag's recent communications with unit owners, he attempts to use the trauma of those past legal disputes and the resultant fall-out to intimidate others into falling in line behind his plan. Freitag also possesses far more information about the HOA and its operations than any of the other unit owners. The combination of imbalance of information and contentious history creates a real risk of prejudice to unit owners who are not Freitag. A neutral receiver will go far to mitigate that risk.

Oregon law also underscores the appropriateness of receivership. Under the Planned Community Act, receivership is the remedy if an HOA fails to elect a board of directors or fill vacancies on the board of directors sufficient to constitute a quorum in accordance with the HOA's bylaws. Or. Rev. Stat. § 94.642(1); Or. Rev. Stat. § 94.616(6)(b). To be clear, I am not resolving BNYM's motion on the basis of Oregon law; we are in federal court and federal

procedural law governs. However, I consider the Oregon Legislature's identification of receivership as the appropriate solution to the problem presented here to be a further reason that appointment of a receiver is appropriate.[2]

III.   *Structure of Receivership*

Having decided that appointment of a receiver is appropriate, I turn to the parties' dispute about the structure of receivership. The first point of contention is who will pay the costs of receivership. Freitag suggests that I order BNYM to bear the full costs. That request is denied. It is well-established that costs of a receiver are generally paid by the entity placed into receivership. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. 2012) ("When a receivership is proper, the general rule is that receivership fees and expenses 'are a charge upon the property administered.'" (quoting *Gaskill v. Gordon*, 27 F.3d 248, 251) (7th Cir. 1994)); *cf.* Or. Rev. Stat. § 94.642(4) ("If a receiver is appointed, the salary of the receiver, court costs, attorney fees and all other expenses of the receivership shall be common expenses of the association."). I note, too, that despite BNYM's motion for a receiver and Freitag's opposition of that motion, the receiver will not be in place to serve BNYM's interests. *See Atlantic Trust Co. v. Chapman*, 208 U.S. 360, 371 (1908) (noting that a receiver is "an indifferent person

---

[2] Freitag argues that I should require BNYM to file any receivership action regarding the HOA in state court. That is quite an about-face from his position in April, when he and Meritage filed a motion for a temporary restraining order and preliminary injunction to prevent BNYM from taking precisely that course of action. In any event, BNYM is not required to file in state court, because receivership is appropriate under Rule 66. Freitag also argues that BNYM has not provided the forty-five day advance notice to other unit owners required under the Oregon Planned Community Act. That argument fails for two reasons. First, as noted, I am not resolving this motion under Oregon law. And second, on February 23, 2018—more than forty-five days before filing the motion to appoint a receiver—BNYM gave notice of its intent to pursue a receivership action in state court. Herbert Decl. ¶ 4, May 1, 2018. That notice apprised Meritage's members of BNYM's intent to move for appointment of a receiver.

Page 7 – OPINION AND ORDER

between the parties" appointed "for the benefit of all parties who may establish rights in the cause").

Second, Freitag raises concerns about the cost of a receiver. Those concerns have merit; receivership can be expensive. But here, the power to eliminate receivership costs will rest in the hands of Meritage's unit owners. One of the receiver's primary tasks will be to assist the HOA in electing a board of directors to manage Meritage's affairs. If the owners are interested in making that happen quickly, the receiver will assist them in doing so. Once power has been responsibly transferred to a duly constituted board of directors, there will be no more need for a receiver, and receivership costs will end. Because the owners will have in their hands the power to end the receivership, I decline Freitag's request for a firm end date to the receivership should attempts to convene a board of directors fail. As for Freitag's request that he be reinstated in the event no board of directors is elected by July 3, 2018, I deny that request as unsupported by any legal authority. For similar reasons, I decline BNYM's request to require the receiver to stay on for at least three months after a board of directors is elected. The length of the receiver's tenure after a board is duly constituted is a matter to be determined by that board in the first instance, subject to approval of this Court.

Finally, I reach one area of agreement. BNYM proposed four individuals to be appointed as receiver for Meritage. One of those individuals was Rohn M. Roberts, of Arnold Gallagher PC. Freitag opposes appointment of a receiver but states that, if a receiver is appointed, it should be Mr. Roberts "because he has the experience, skill, and integrity to manage the Association with impartiality." Def. Third-Party Kurt Freitag's Opp. Mot. Appt. Receiver Meritage HOA at 2 (doc. 151). I agree that Mr. Roberts is well-suited to the task of receivership here.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. BNYM's motion for appointment of a receiver for The Meritage Homeowners' Association (doc. 133) is GRANTED.

2. I appoint ROHN M. ROBERTS of Arnold Gallagher, PC, 800 Willamette Street, Ste. 800, Eugene, OR, 97440 as receiver to perform the duties and responsibilities as set forth in this order.

3. Mr. Roberts shall be compensated by Meritage HOA at a reasonable hourly rate for reasonable hours expended in performing the duties and responsibilities of receiver under this order. Mr. Roberts shall submit monthly statements of hours expended and rates requested, with a description of activities performed, to this Court for approval.

4. Mr. Roberts shall possess all of the powers and duties of a duly constituted board of directors under the Oregon Planned Community Act, Meritage at Little Creek's governing Declaration, and Meritage HOA's bylaws. Nothing in this order, including the specific enumeration of duties below, shall be construed to limit Mr. Roberts's authority under those laws and governing documents.

5. Mr. Roberts shall have the following duties:

> A. To facilitate, as expeditiously as practicable, the election of a board of directors consistent with the requirements of Meritage HOA's bylaws;
>
> B. To conduct a complete accounting of Meritage's assets and liabilities;
>
> C. To manage the day-to-day affairs of Meritage HOA, including but not limited to:
>
>> i. The assessment and collection of quarterly dues and other assessments and fees;
>>
>> ii. The management of rental properties owned by Meritage HOA, including by collecting rents, negotiating new rental agreements, making repairs, and responding to tenant requests. Every effort is to be made to ensure that there is no substantial change in or interference with the experience of the tenants at Meritage at Little Creek as a result of this lawsuit.
>>
>> iii. The payment of bills;

        iv. The maintenance of common property at Meritage at Little Creek;

D. To retain counsel to represent Meritage HOA in this action and in other legal matters, to advise counsel on substantive decision in connection with such litigation, and to authorize the reasonable payment of attorney's fees as necessary and in the best interests of Meritage HOA.

E. To form contracts on behalf of Meritage HOA in connection with the duties enumerated in this order, including without limitation the hiring, if deemed necessary and appropriate, of a property manager or an accountant.

F. To propose a schedule for keeping this Court apprised of the activities of the receivership with respect to the election of a board of directors, the accounting of Meritage's assets and liabilities, and other matters the receiver believes necessary to bring to the Court's attention. A proposed schedule for submission of written updates is due July 1, 2018.

G. To inform the Court promptly if at any point he believes that a receivership is no longer in the best interests of Meritage HOA.

6. Kurt Freitag shall immediately and continuously cooperate with Mr. Roberts in order to facilitate Mr. Roberts's fulfilment of his duties under this order. Mr. Freitag shall surrender control of all accounts and assets of Meritage HOA to the control of Mr. Roberts. Mr. Freitag shall disclose to Mr. Roberts all information he has relating to assets and liabilities of the HOA.

7. Through June 30, 2018 or an earlier date identified by Mr. Roberts, I hereby extend Mr. Freitag's limited authority to make the day-to-day management decisions approved in my May 1, 2018, preliminary injunction order. He shall communicate with Mr. Roberts during that time period about any and all actions taken on behalf of Meritage HOA. The provisions in the preliminary injunction setting out the temporary process for approving expenses in the ordinary course of Meritage's business are dissolved as of the date of this order. Between the date of this order and June 30, 2018 or the earlier date identified by Mr. Roberts, Mr. Freitag shall:

A. In connection with bills in the normal course of Meritage's business, electronically send a copy of any bill to Mr. Roberts, who shall have authority to approve or disapprove payment.

B. In connection with receipt of rents from tenants, electronically send a copy of any rent check or other record of rental payment to Mr. Roberts promptly after depositing rents.

       C. Promptly notify Mr. Roberts of any expenses associated with ordinary repairs and issues of tenancy and await Mr. Roberts's approval before making payment.

8. Beginning July 1, 2018 or on an earlier date identified by Mr. Roberts, Mr. Freitag shall be without authority to conduct any activity on behalf of Meritage HOA including any actions taken to manage the day-to-day operations of the HOA. Mr. Freitag will, however, retain the obligation to cooperate with Mr. Roberts in order to facilitate the smooth transition of Meritage into receivership.

IT IS SO ORDERED.

Dated this 25th day of May 2018.

                                            Ann Aiken
                                   United States District Judge