IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MERITAGE HOMEOWNERS' ASSOCIATION, | |
| Plaintiff, | No. 6:16-cv-00300-AA |
| v. | **OPINION & ORDER** |
| BANK OF NEW YORK MELLON, | |
| Defendant. | |

AIKEN, District Judge.

This case comes before the Court on the Receiver's proposal for the marketing and sale of HOA-owned properties. ECF No. 254. The parties have submitted these issues to the Court on the briefing and no hearing was held.

## BACKGROUND

The full background of this case is set forth elsewhere and will not be reproduced here except as necessary.

There are eighteen units in the Meritage development and eight of those units are owned by the Meritage Homeowners' Association (the "HOA"). Some of the HOA-owned units are being rented out on a month-to-month basis while others sit empty due to apparent code violations.

The Receiver, appointed by this Court on May 25, 2018, ECF No. 157, determined that some or all HOA-owned units would need to be marketed and sold in order to satisfy claims and restore existing cash reserves to a level sufficient to undertake deferred maintenance and repairs.

The Receiver called a meeting of the HOA on April 28, 2022 to propose the marketing and sale of the HOA-owned units. At the meeting, the Receiver proposed that an advisory committee of three or four HOA members to consult with the Receiver on the marketing and sale of the properties. Roberts Decl. Ex. 4, at 2. ECF No. 248-1. In the meeting, fifteen owners voted in favor of Receiver's proposal, including eight votes cast by the Receiver on behalf of the HOA-owned lots. *Id.* No owners voted against the proposal and a single owner abstained. *Id.*

## DISCUSSION

There are two issues presently before the Court for resolution. They are (1) the Receiver's request for an order declaring that the vote of the Owners of Lots held on April 28, 2022 was sufficient to authorize the marketing and sale of HOA-owned lots under the Oregon Planned Community Act; and (2) for an order authorizing the receiver to market and sell the HOA-owned lots by private sale.

### I.     The Validity of the April 28, 2022 HOA Vote

As noted, the Receiver seeks an order from the Court "declaring that the vote of the Owners of Lots (including the Receiver on behalf of the HOA Lots) at the meeting of the Owners held on April 28, 2022 was sufficient to authorize the marketing and sale of the HOA owned Lots and improvements located thereon

(collectively, the 'Units') as required by ORS 94.665." Objections to this request have been made by Claimants Sue Cowden, Big Fish Partners, and Sherman Sherman Johnnie & Hoyt LLP.

Oregon law provides that "[e]xcept as otherwise provided in the declaration, a homeowner's association may sell, transfer, convey or subject to a security interest any portion of the common property if 80 percent or more of the votes in the homeowners association, including 80 percent of the votes of lots not owned by a declarant at the time of the vote, are cast in favor of the action." ORS 94.665(1).

For purposes of this statute, "common property" is defined as "any real property or interest in real property within a planned community which is owned, held or leased by the homeowners association or owned as tenants in common by the lot owners, or designated in the declaration or the plat for transfer to the association." ORS 94.550(7). The "declaration" is "the instrument described in ORS 94.580 which establishes a planned community, and any amendments to the instrument." ORS 94.550(11). Likewise, "declarant" is defined as "any person who creates a planned community under ORS 94.550 to 94.783." ORS 94.550(9).

The essential thrust of Claimants' objections is that the Receiver was not permitted to cast votes on behalf of the HOA-owned properties and that, in the absence of those votes, only seven of the ten non-HOA owners voted in favor of the Receiver's proposal. The objecting Claimants contend that this falls short of the 80% required by ORS 94.665(1).

The objecting Claimants' position depends, however, on the supposition that the HOA, and the Receiver, are successor declarants and so the votes of the HOA-owned properties should not be counted. However, the Court's prior Order appointing the Receiver placed the Receiver in the position of fulfilling the "duties of a duly constituted board of directors under the Oregon Planned Community Act, Meritage at Little Creek's governing Declaration, and Meritage HOA's bylaws." Order Appointing Receiver, at 9, ECF No. 157. Consistent with that Order, the Receiver acts in place of the board of directors until such time as a board is duly elected, rather than as a successor declarant.

Furthermore, under ORS 94.600, "[u]pon the expiration of any period of declarant control reserved in the declaration . . . the rights automatically shall pass to the lot owners . . ." ORS 94.600(3). The HOA, through the Receiver, is acting as a lot owner and not as a successor declarant. Under the Meritage Declaration § 7.1, membership in the HOA "shall be appurtenant to, and may not be separated from, ownership of any Lot," and "[t]ransfer of ownership of a Lot shall transfer automatically membership in the Association." As relevant to this issue, the Declaration and the Meritage Bylaws similarly provide that each owner is entitled to one vote for each lot owned with respect to all matters upon which the Owners are entitled to vote. Meritage Decl. § 7.3; Meritage Bylaws § 2.2.

The HOA, as the owner of eight lots, is entitled to cast eight votes under the Meritage Declaration and Bylaws and such an arrangement is permissible under the Oregon Planned Community Act. The HOA votes, together with the seven

Page 4 – OPINION & ORDER

affirmative votes of the other owners, make up 83% of the homeowners and satisfy the requirements of ORS 94.665(1). The Receiver is therefore entitled to a declaration that the April 28, 2022 vote of the members was valid and such an order shall be issued.

## II.  Authorization for Private Sale

The Receiver also requests an order "authorizing the Receiver to market and sell the HOA owned Units by way of private sale pursuant to 28 U.S.C. § 2001, subject to the requirements of 28 U.S.C. § 2001(b), with the net proceeds of such sale to be deposited into a segregated account pending further order of the Court." The relevant statute, 28 U.S.C. § 2001, provides in pertinent part:

> (a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.
>
> Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.
>
> (b) After a hearing, of which notice to all interested parties shall be given to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to

>appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

28 U.S.C. § 2001.

The Receiver offers, and the Court concurs, that the procedures spelled out in § 2001 are mandatory, however cumbersome they may be. Here, none of the claimants or parties object to the necessity of selling the HOA-owned units. Nor do any parties or claimants object to the use of private sales, rather than the default process of public sale by auction. Rather, the parties dispute the "terms and conditions" of the proposed sale.

The Receiver proposes to sell the HOA-owned units in stages, beginning with the most marketable units, giving "due consideration to the extent (and cost) of repairs/improvements necessary to optimize price, as well as location within the project, etc." The Receiver has conferred with a local real estate professional to advise in this matter and who will be able to refer the Receiver to potential appraisers who would be able to offer the disinterested appraisals called for by § 2001(b). The Receiver also proposes to appoint an advisory committee of homeowners from within the HOA to assist in the sale process.

The objecting claimants assert that the Receiver's proposal for the sale of the property lacks sufficient detail for the Court to determine whether the staged sale of the properties would be in the best interest of the HOA. Objecting claimants question

whether the Receiver can maximize the private sale price for the HOA-owned units, and particularly of the first unit sold, as those will set the benchmark for assessing the value of subsequent units to be sold. Objecting claimants also point to the effect of deferred maintenance and repairs on potential values.

The Receiver responds that these objections are premature and stresses that the appraisal and sale confirmation procedures provided for in § 2001(b) will give all interested parties an opportunity to object to any aspect of the proposed sale of any of the units before the sale can be consummated. The Receiver also points out, and the Receiver's most recent reports show, that the HOA has cash on hand which might be used to place the units into saleable condition to ensure that the HOA receives the maximum return for the sale of the HOA-owned units. The Receiver has also represented to the Court that the sale of the units will be untaken with the assistance of a real estate professional and the advice of a committee of homeowners from within the HOA. Of necessity, all private sales of HOA-owned units must follow the strict statutory procedures spelled out in 28 U.S.C. § 2001.

On this record, the Court concludes that the best interests of the estate will be served by private sale of the units on a staged basis following the procedure proposed by the Receiver. The Court therefore grants the Receiver's request and authorizes the Receiver to market and sell the HOA-owned units by private sale, subject to the requirements of § 2001(b), including appraisal, publication, and a confirmation hearing at which interested parties may present their specific objections to a proposed sale.

## CONCLUSION

For the reasons set forth above, the Receiver's request is GRANTED and the Court hereby DECLARES that the vote of the Owners of Lots, including the Receiver voting on behalf of the HOA-owned Lots, taken at the meeting of the Owners on April 28, 2022 was sufficient to authorize the marketing and sale of the HOA-owned Lots and improvements thereon (collectively, the "Units") as required by ORS 94.655.

The Court further ORDERS that the Receiver is authorized to market and sell the HOA-owned Units by way of private sale, subject to the procedures and requirements of 28 U.S.C. § 2001(b), and upon such terms and conditions as the Receiver reasonably believes to be in the best interest of the HOA, in consultation with such real estate professionals and others, including any advisory committee established among select HOA members, as Receiver deems necessary and advisable, with the net proceeds of such sales to be deposited into a segregated account pending further order of the Court. The Receiver is to include information about the marketing and preparations for sale of properties in his regularly submitted reports to the Court. The Receiver is to notify the Court at the appropriate time with the Receiver's proposal for individuals to be appointed to offer appraisals of the Unites to be sold. The Court will set a hearing and any interested party may make objections or counterproposals. The process for confirmation of the sales will proceed as set forth in § 2001(b).

It is so ORDERED and DATED this <u>29th</u> day of November 2023

/s/Ann Aiken<br>
ANN AIKEN<br>
United States District Judge