IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**MERITAGE HOMEOWNERS'**
**ASSOCIATION,**

        Plaintiff,                                    No. 6:16-cv-00300-AA

    v.                                        **OPINION & ORDER**

**BANK OF NEW YORK MELLON,**

        Defendant,

**BANK OF NEW YORK MELLON,**

        Third-Party Plaintiff,

    v.

**MERITAGE HOMEOWNERS'**
**ASSOCIATION,**

        Nominal Third-Party Plaintiff,

    v.

**KURT FREITAG,**

        Third-Party Defendant.

_____

AIKEN, District Judge.

      This case comes before the Court on the Petition of the Receiver, Rohn Roberts.

ECF No. 248. The Court held a two-day evidentiary hearing on February 13 and 14,

2024. ECF Nos. 301, 352. The Court GRANTS the Petition. The Receiver's objection

to claims presented by Big Fish, Sue Cowden, and PSRG Trust are merited and the claims disallowed.  The deeds of trust placed on Meritage-owned properties in favor of PSRG Trust are void and title to the Meritage-owned properties is quieted in favor of Meritage.

## LEGAL STANDARDS

Courts possess "extremely broad" power when "determin[ing]" the appropriate action to be taken in the administration of the receivership." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986).  The court's power and its related "wide discretion" extend to "determine[ing] the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978).

When administering the distribution of receivership assets, federal district courts may "make rules which are practicable as well as equitable," including approving the use of summary procedures. *Hardy*, 803 F.2d at 1038-39.  Specifically, "[r]ecievership courts have the general power to use summary procedure in allowing, disallowing, and subordinating the claims of creditors." *United States v. Ariz. Fuels Corp.*, 739 F.2d 455, 458 (9th Cir. 1984).  Generally, it is the claimant's burden to establish a valid claim against the receivership estate.  *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (describing the general rule that, in the bankruptcy context, creditors must establish a valid claim against the debtor); *see also SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005) (finding bankruptcy "analogous" to and, therefore, persuasive in the administration of receivership estates).

## BACKGROUND & FINDINGS OF FACT

The full background of this case is set forth in the Court's decision on the Motion for Summary Judgment, ECF No. 119, (the "April 2018 O&O") and is incorporated by reference. The Court will reproduce aspects of the background as necessary.

## I.    The Parties and Claimants

Plaintiff Meritage Homeowners Association ("Meritage" or "the HOA") is an Oregon domestic nonprofit corporation founded to serve as a homeowners association for the Meritage at Little Creek development in Newport, Oregon. Meritage covers eighteen townhouses (the "Units") built between 2003 and 2006. Meritage provides certain services to the owners of the Units, including maintenance on the exterior of the Units, except for the Units' windows, which are the responsibility of the owner of the Unit. To pay for these services, owners of Units must pay homeowner dues quarterly based on the established annual budget for services.

On May 25, 2018, this Court appointed Rohn M. Roberts as the Receiver for Meritage. ECF No. 157 (the "May 2018 O&O"). Among his responsibilities, the Receiver was directed to conduct a complete accounting of Meritage's assets and liabilities. This Order concerns resolution of several claims made against Meritage, to which the Receiver has made objections.

Claimant Big Fish Partners ("Big Fish") is an Oregon multi-family real estate developer originally registered in 2000. Third-Party Defendant Kurt Freitag is the managing partner of Big Fish. In that capacity, Freitag was the developer who

planned and built Meritage and was the declarant for the community for purposes of the Oregon Planned Communities Act. As discussed in greater detail below, Freitag exercised administrative control over Meritage until the Court appointed the Receiver.

Claimant Sue Cowden is the owner of one of the Units in the Meritage development (the "Cowden Unit"). Big Fish manages the Cowden Unit on behalf of Cowden. As relevant to this Order, Big Fish and Cowden assert a claim for $5,586.00 against Meritage for the repair of an exterior window in the Cowden Unit. All other claims advanced by Big Fish and Cowden were voluntarily dismissed without prejudice during the hearing. The Receiver has objected to Big Fish and Cowden's claim. ECF No. 213.

Claimant Professional Services Resource Group Profit Sharing Plan ("PSRG Trust") is a claimant in this case. PSRG Trust is a retirement trust account for the sole benefit of Freitag and his spouse Rita Schaefer, and for which Freitag is the grantor, trustee, and beneficiary. PSRG Trust asserts a claim for $1,125,000 against Meritage to recover money PSRG Trust claims to have advanced to the HOA. The Receiver has objected to PSRG Trust's claim. ECF No. 211.

The evidence and testimony at the hearing was that Freitag comingled the funds of Big Fish, Meritage (during the period of his control of the HOA), PSRG Trust, and, apparently, Freitag's own personal assets. As such, the Receiver considered the three Freitag-controlled entities "as one collective entity." Ex. 135, at 2. The Court concludes, based on the testimony and evidence, that there was little practical

financial distinction between the three entities, and it appears that Freitag freely moved money between them. The Court concludes that the Receiver's view of the Freitag entities as a single collective entity is reasonable in light of the facts presented.

## II.    Freitag's Control of the HOA

As the declarant, Freitag exercised administrative control over the HOA pursuant to the Oregon Planned Communities Act. This period of administrative control was meant to last only until there were a certain number of homeowners in the HOA at which point control of the HOA was meant to pass from the declarant, Freitag, to the Unit owners. April 2018 O&O, at 3. However, this handover of power never occurred and Freitag retained administrative control of Meritage until 2018 when this Court determined that:

> Under the unambiguous terms of the Declaration, mandatory turnover was triggered on June 5, 2004. Oregon law provides that once mandatory turnover is triggered, the period of declarant control ends and the rights and responsibilities associated with management of the homeowners' association pass to the owners. Freitag therefore lacked legal authority to act on behalf of Meritage after June 5, 2004.

April 2018 O&O, at 44.

In May 2018, the Court appointed Rohn Roberts to act as the Receiver for Meritage and, since that appointment, the Receiver has exercised administrative control over Meritage.

In addition, Freitag's simultaneous control of Meritage, Big Fish, and PSRG Trust put Freitag in a position where he was able to engage in a considerable course of poorly documented self-dealing. The inherent difficulties in disentangling that

self-dealing are exacerbated by Freitag's failure to memorialize transactions between the entities he controlled and his failure to preserve financial records. The Court is left, in many places, with little more than Freitag's testimony that certain sums were advanced to Meritage by PSRG Trust and that those sums were not repaid. The Court considered Freitag's demeanor and manner of testifying, as well has his obvious pecuniary interest in the outcome of PSRG Trust's claim and finds Freitag's testimony not credible.

In addition, Freitag testified that Jim Johnstone, a former Meritage homeowner and the chief operating officer of Meritage under Freitag, has absconded, taking the HOA's financial records with him. The Court finds this testimony not credible. The picture painted by the evidence is one of multiple Freitag-controlled enterprises with comingled and poorly documented finances. Even if the Court were to accept that Johnstone was the custodian of Meritage's financial records, he would not have been in a position to control the records of PSRG Trust or Big Fish or Freitag himself and those records would have been unaffected by Johnstone's disappearance. Those records are not, however, available to support PSRG Trust's claims, apparently through Freitag's own self-imposed document retention policy. It seems far more credible to this Court that the HOA financial records never existed in the first place rather than that Johnstone conveniently made off with them.

### III.    Prior Litigation Involving Meritage

In 2008, Meritage and Big Fish filed a construction defect action in Oregon state court alleging defective installation of the windows in all eighteen Meritage Units (the "window litigation"). April 2018 O&O, at 3.

In December 2010, Meritage's then-attorney informed the attorneys for two of the Unit owners that there were two possible arrangements for the repair of the windows in the Units. Ex. 316. The owners could either assign the claim to the developer, Big Fish/Freitag, and have the window replaced as part of the window litigation, or the owner could make direct arrangements with a vendor, Dallas Glass, to replace the windows. *Id.* The "very rough" estimate for the cost of replacing the windows was $100,000 for a one-bedroom Unit; $125,000 for a two-bedroom Unit; and $150,000 for a three-bedroom Unit. *Id.*

In 2011, many of the Meritage homeowners sued Freitag, Big Fish, and Meritage in Oregon state court alleging claims for breach of fiduciary duty and negligence (the "HOA litigation"). The Unit owners also used the HOA litigation to attempt to force Freitag to turn over control of Meritage to the homeowners. The Unit owners also intervened in the window litigation. April 2018 O&O at 4.

Concurrent with the HOA litigation, many of the Unit owners withheld payment of HOA dues as a "dues strike." In response, Meritage sued the Unit owners in Oregon state court for failure to pay assessments, dues, and other fees (the "collection litigation"). April 2018 O&O, at 4.

In 2011, Freitage "acting as princip[al] of [Big Fish] and PSRG Trust, asserts that he arranged a lending relationship between [Meritage] and PSRG Trust, whereby PSRG Trust could make advances to [Meritage] under a letter of understanding and authority, which as signed on July 13, 2011 by Jim Johnstone, the Chief Operating Officer of [Meritage]." Ex. 758, at 5.

In 2012, the HOA litigation settled. April 2018 O&O at 5. To meet the cost of the HOA litigation and the cost of repairing the windows, Freitag caused the HOA to levy significant fines and special assessments against the homeowners. Ex. 136, at 5. Many of the homeowners were unable to pay the assessments. *Id.*

In September 2013, Freitag, in his capacity as declarant, approved a resolution imposing a fine of $500 per day, up to $5,000 per month, against any unit owner that failed to repair the windows or deposit money to begin the window replacement process. April 2018 O&O, at 5.

Also in 2013, the window litigation settled. April 2018 O&O, at 5. The relevant parties to the window litigation settlement were Freitag, Schaefer, Big Fish, Meritage, and the owners of the Units. Ex. 134, at 1. The windows litigation settlement included a mutual release, although that release did not apply to Meritage's claims against "any owner of a unit in Meritage for failure to pay dues, assessments or fines or for non-compliance with the Covenants, Conditions and Restrictions of Meritage or any action taken pursuant thereto." *Id.* at 3-4. Notably, PSRG Trust was the only Freitag entity connected to Meritage that was not a party to this settlement. Of the eighteen Unit owners in the windows litigation, twelve

assigned their rights to Big Fish, while the remaining six elected to pursue their own claims. *Id.* at 3.

The settlement of the window litigation resulted in payment of $1,145,000 to Big Fish. Ex. 134, at 5. After payment of itemized amounts set forth in the settlement agreement, *Id.* at 6-8, Big Fish received a net payment of $675,926.55. Ex. 135, at 2.

The Receiver calculated that Freitag, Big Fish, and PSRG Trust collectively advanced $389,714.99 to repair the windows.[1] Ex. 135, at 2. In total, Big Fish received $286,211.56 more from the windows litigation settlement than the various Freitag entities had advanced to repair the windows. *Id.*

In February 2014, Meritage obtained a judgment against at least some of the Unit owners in the collection litigation. April 2018 O&O, at 5. As a result of the collection litigation, Meritage acquired title to several of the Units and, as of the time of the hearing, Meritage owns eight of the eighteen Units.

## IV.    The Dallas Glass Payments

During the litigation of this case, Dallas Glass, which actually performed the replacement of the exterior windows in the Units, provided the parties with an accounting of payments it received for the replacement of the windows and the identity of the payor. The assistance of Dallas Glass in furnishing this information was necessary because records of these payments were not preserved by the Freitag

---

[1] Additional sums of $156,886.75 and $83,000 were advanced directly to individual homeowners by PSRG Trust to replace the windows in those homeowners Units. Ex. 135, at 2. The Receiver excluded these separate loans, which did not concern Meritage, from the analysis and the Court concludes that this exclusion was proper. Ex. 135, at 2.

entities or by Meritage, which was under Freitag's control at the time of the transactions.

Freitag and Schaefer made payments totaling $225,286.75 between February 28, 2011, and June 9, 2011, and made further payments totaling $320,805.29 between December 31, 2012, and August 7, 2014. Ex. 309, at 5. These payments drew from the Fidelity account of Freitag and Schaefer.

Freitag made additional individual payments, for which no originating bank is recorded, between November 12, 2012, and December 3, 2012, which totaled $30,600. Ex. 309, at 5.

Big Fish made a single payment of $17,000 on February 20, 2012, which drew on Big Fish's account at West Coast Bank. Ex. 309, at 5.

PSRG Trust made three payments between April 26, 2012, and September 4, 2012, which totaled $26,750, and drew on PSRG Trust's account at Fidelity bank. Ex. 309, at 5.

There were two unidentified VISA payments on January 14, 2013, for $8,500 and on August 15, 2014, for $659.70. Ex. 309, at 5.

Between October 28, 2014, and November 6, 2017, all entity-related payments were made by Meritage, drawing on accounts at Columbia State Bank and Northern Trust. Ex. 309, at 5. The Meritage payments totaled $271,304.48. *Id.* Individual Unit owners made additional payments totaling $354,475.00. *Id.*; Ex. 136, at 14.

In total, Dallas Glass was paid $1,255,381.22 to replace exterior windows in the Meritage Units. Ex. 136, at 14. $629,601.74 of that money came from a Freitag

entity—Big Fish, PSRG Trust, Freitag himself, or Freitag and Schaefer together. *Id.* Meritage provided $271,304.48 and the remaining $354,475.00 came from the homeowners. *Id.*

The evidence indicates that the amount received by the Freitag entities from the settlement of the window litigation exceeded the amount they paid to Dallas Glass by $50,774. Ex. 136, at 15.

## IV.    The Letters of Understanding

In July 2011, PSRG Trust and Meritage signed a "Letter of Understanding." Ex. 709. The Letter of Understanding referenced the dues strike, which was part of the HOA litigation, as well as Meritage's need for funds to maintain operations and continue the HOA litigation. *Id.* The Letter relates that PSRG Trust was the "only entity" willing to provide funding to Meritage. *Id.*

Under the Letter, Meritage assigned to PSRG Trust, "on the terms and conditions set forth in the documents related to the loan contemplated by the parties, its accounts receivable, its lien rights against the homeowners, and all other rights and remedies it might possess under law or agreement related to such assets." Ex. 709, at 1-2. In return, PSRG Trust agreed to make an initial advance of $25,000 and might "make subsequent advances based upon its sole discretion prior to the finalization of the financing documents." *Id.* at 2. Money advanced to Meritage was to accrue simple interest at a rate of 9%. *Id.*

The Letter was signed by Freitag on behalf of PSRG Trust and by Jim Johnstone on behalf of Meritage. Ex. 709, at 3.

### V.    The Promissory Notes and the Deeds of Trust

On July 17, 2014, Meritage and PSRG Trust executed a promissory note for $250,000 "or so much thereof as may be from time to time owing under this Promissory Note" at 7% interest.  Ex. 742, at 1.  The 2014 promissory note is signed by Freitag as "President/Secretary" of Meritage.  *Id.* at 4.

The 2014 promissory note was ostensibly secured by a deed of trust to three of the Meritage-owned Units.  Ex. 744.  This deed of trust was signed by Freitag on behalf of Meritage.  *Id.* at 10.

In January 2015, the deed of trust was modified to reflect a debt of $1,000,000 secured by liens on an additional Unit.  Ex. 746.  This modification is signed by Freitag on behalf of both Meritage and PSRG Trust.  *Id.*

In June 2015, Meritage issued a "Resolution" in which it determined that it would borrow a sum of $1,000,000 from PSRG Trust at 7% interest.  Ex. 747.  The "Resolution" stated that "[t]he Officer of the HOA authorized to sign on behalf of the HOA is Kurt Freitag, President."  *Id.*  The Resolution is signed by Freitag as president of Meritage.  *Id.*

On December 14, 2016, Meritage and PSRG Trust entered into further promissory note, this time for $1,000,000.  Ex. 749.  The 2016 promissory note relates that the 2014 promissory note remains unpaid and that "Lender has made further advanced [sic] to Borrower since the date of the note," and "the total advances, plus accrued and unpaid interest, total approximately $800,000."  Ex. 749, at 1.  As with

the 2014 promissory note, the 2016 promissory note was signed by Freitag as President/Secretary of Meritage. *Id.* at 5.

Both promissory notes were entered into during a period in which this Court has already ruled that Freitag lacked the legal authority to exercise control over Meritage. In addition, both promissory notes are the product of self-dealing, as they were "negotiated" between Freitag, acting on behalf of Meritage, and Freitag in his capacity as trustee and beneficiary of PSRG Trust. In addition, as discussed below, the promissory notes contradict both one another and the other evidence in the record concerning the amounts allegedly advanced to Meritage by PSRG Trust and provide little insight into repayment of those sums by Meritage.

## VI.    Meritage Resolutions

PSRG Trust has also presented the Court with "Resolutions" of the HOA concerning the claimed loans from PSRG Trust to Meritage. Exs. 741, 747. Freitag was in sole control of Meritage at the time of the Resolutions. These Resolutions were issued by Freitag, signed by Freitag, and purported to authorize Freitag to borrow funds at 7% interest from the Freitag-controlled PSRG Trust. They are not supported by source documents evincing transfers of funds to Meritage by PSRG Trust. In addition, the evidence before the Court is that these Resolutions were issued at HOA "meetings" that were only attended by Freitag and, perhaps, Jim Johnston. *See* Ex. 714 (minutes of an advisory committee meeting from August 2013, at which "[t]he committee approved the resolution required for the loan agreement," and showing

those present were Freitag and Johnstone and "Those Absent: None"). The Court finds that these Resolutions provide little support for the existence of the alleged debt.

## VII.    Personal Checks

PSRG Trust has provided a series of personal checks written by Freitag to Dallas Glass and drawing on Freitag's personal account. Ex. 701, 702, 703, 706, 707, 708, 710, 725, 736, 738, 739, 740, 743. Notably, none of these checks reference PSRG Trust or give any indication that they were advanced on behalf of PSRG Trust, as opposed to some other Freitag entity.

The testimony at the hearing was that PSRG Trust often does not maintain a significant balance on its accounts. Freitag testified that he would frequently move money between PSRG Trust and other Freitag-owned entities, such as Big Fish, and would only balance the books at intervals. In addition, Freitag testified that he would send money to Meritage but that these transfers were actually coming from PSRG Trust. These transfers of money were generally not memorialized or documented and this fact has plagued all efforts to disentangle the relationship between the various Freitag entities and the HOA, including the efforts of PSRG Trust's own expert. Ex. 758.

The Court is left, essentially, with Freitag's testimony that checks made out to Dallas Glass and drawing on Freitag's personal bank accounts were, in fact, loans made by PSRG Trust to Meritage. As previously discussed, the Court found this testimony not credible.

## VIII.  Meritage Financial Reports

PSRG Trust has also provided the Court with Financial Statements for the HOA, prepared by Fischer, Hayes & Associates, which purport to show income from the proceeds of loans from PSRG Trust.  *See, e.g.,* Ex. 724.  The Couch report, discussed below, demonstrates that CPAs preparing such reports do not warrant their accuracy and that, in this case, the reports are drawn from statements provided to the CPA by Freitag.  As the Couch report states, there are none of the supporting source documents one would expect to find to support the existence of such a loan.  In addition, as the Couch report noted, there are no financial reports on Meritage beyond 2013.  The Court concludes that these financial reports are not reliable evidence of the existence or amount of any debt owing to PSRG Trust.

## IX.    The Expert Reports

Both the Receiver and PSRG Trust retained experts, who prepared reports and offered testimony concerning PSRG Trust's claims against Meritage.

### A. The Bradford Report

PSRG Trust retained Emily Bradford, CPA, CFE, to serve as an expert in support of PSRG Trust's claim.  Bradford's efforts to review PRSG Trust's claims were dogged by the same lack of consistent or reliable records that have plagued the Court's review of the claim.  This fact significantly undermines the utility of the Bradford report and Bradford's testimony.  As Bradford observed:

> We were not provided with bank statements and other source documents that would allow us to inspect all transactions of PSRG Trust and related entities of Mr. Freitag and [Meritage] for the entire time period July 14, 2011 to July 17, 2014, which impacted our ability to verify the

occurrence of certain transactions and could mean that there are transactions that occurred but were not identified by us.

Mr. Freitag could have authored transactions of [Meritage] during the time period subject to our analysis, that resulted in a direct benefit to PSRG Trust, Mr. Freitag or related entities of Mr. Freitag, and such transactions may not have been identified to us due to the information that was not made available to use, including detailed information that would support the transactions in the records we inspected.

Ex. 758, at

The Court has considered the Bradford report but the lack of supporting evidence and source documents available to Bradford limit the value of both the report and Bradford's testimony in establishing the validity and amount of PSRG Trust's claim.

## B. The Couch Report

The Receiver retained Tiffany Couch, CPA/CFF, CFE to "examine the HOA's financial statements and to assess whether they accurately reflect the amounts owed to Kurt Freitag, Big Fish Partners, or PSRG Trust (Freitag Entities)." Ex. 136, at 1. Much like Bradford, Couch's efforts were impeded by the lack of evidence and source documents for PRSG Trust's claims. In her report, Court reached five conclusions:

(1) There was insufficient relevant evidence to determine the amounts owed to the Freitag entities. Couch found there was "little substantive evidence documenting alleged advances, evidence produced contradicts alleged loan advances, and payments received have not been properly accounted for." Ex. 136, at 4.

(2) The compilation reports provide no assurances by the CPA.  Accountants are not required to verify the accuracy or completeness of information provided or to gather evidence under a compilation agreement.  As a result, the fact that the Meritage financial reports "were signed by a CPA does not make them reliable to determine the nature of, amount, or current value of alleged loans to the Freitag Entities."  Ex. 136, at 4.

(3) The CPA working paper did not include any proof of the alleged loan transactions.  Couch reviewed the financial statements for Meritage between January 2011 and March 2013 and found that the documents provided by the CPA firm "only include journal entries related to alleged loans between the HOA and the Freitag Entities or emails with Mr. Freitag confirming the amounts to be loans."  Ex. 136, at 4.  "There are no bank documents, cancelled check images, detailed general ledgers, loan documents, or other information that state the purpose, amount, or dates of the alleged loans."  *Id.*

(4) There is no Meritage financial reporting after December 31, 2013.  Couch found that there were no financial reports for Meritage after March 31, 2013, and that there was only a trial balance showing alleged ending balances for the end of 2013.  "It does not appear that an external CPA was asked to analyze the financial records, properly categorize income and expenses, and/or audit or review the books and records of the HOA."  Ex. 136, at 4.  "The lack of proper financial reporting and the fact that Mr.

Freitag had sole control of [Meritage]'s finances in the intervening years creates doubt about the Freitag Entities claims." *Id.*

(5) Freitag's promissory notes and amortization schedules are unreliable. Couch noted that the promissory notes and letters of understanding contain varying amounts due and varying interest rates. "Most notably, one promissory note contains an amortization schedule which shows 'advances,' but those amounts are deposits payable to the HOA from external third parties, not from any of the Freitag Entities," and "the amortization schedule does not account for payments received by the Freitag Entities." Couch found that this rendered the calculations "unreliable and put into question the veracity of earlier alleged 'loan advances.'" Ex. 136, at 4.

The Court finds Couch's report thorough, searching, and reliable. The Court also finds Couch's testimony to be reliable and compelling.

## DISCUSSION & CONCLUSIONS OF LAW

As relevant to this proceeding, the Receiver made two requests in his Petition to the Court:

(1) For an Order declaring that the deeds of trust executed by Kurt Freitag (purporting to act on behalf the HOA) in favor of PSRG Trust and allegedly encumbering certain HOA owned Units are void and of no force or effect, quieting title to such Units in the HOA; and awarding the HOA its attorney fees incurred in connection therewith; and

(2) For a Scheduling Order establishing a process to adjudicate the validity of the claims presented to the Receiver by the developer-related parties—PSRG Trust, Big Fish Partners, and Sue Cowden.

The Court held a two-day evidentiary hearing on the validity of the claims brought by PSRG Trust, Big Fish Partners and Sue Cowden on February 13 and 14, 2024. Big Fish Partners and Cowden withdrew most of their claims either before the hearing or during the hearing itself. The sole remaining claim for Big Fish Partners and Cowden concerns a claim for damage to a window in Cowden's Unit. The Receiver stipulated to the withdrawal of the other claims without prejudice but reserved his right to petition for the recovery of attorney fees and costs incurred in preparing to defend against those claims. The Court accepts the stipulation and all claims brought by Big Fish Partners and Sue Cowden, with the exception of the claim concerning damage to the window in the Cowden Unit, are withdrawn without prejudice. The Court recognizes the Receiver's reservation of the right to pursue attorney fees and costs associated with preparing to defend those claims and will consider a petition for fees and costs at the appropriate time.

In sum, there are three remaining issues that require determination: (1) the claim for damage to the window of the Cowden Unit; (2) the validity of the deeds of trust; and (3) the claims of PSRG Trust. The second and third issue are closely related and will be discussed together.

# I.    Cowden's Claim for Damage to the Window of the Cowden Unit

As noted, Big Fish and Cowden withdrew all but one of their claims against the HOA.  That remaining claim concerns $5,586 expended by Big Fish and Sue Cowden to repair a broken window at the Unit owned by Cowden and managed on her behalf by Big Fish.  Big Fish and Cowden assert that the window was damaged by an independent contractor hired by the HOA to perform unrelated repairs to the exterior of the Cowden Unit.

The evidence presented at the hearing was that the damage to window was not discovered by or disclosed to Cowden at the time the damage is alleged to have occurred.  Instead, an outgoing tenant informed Cowden of the damage months after the fact.  All evidence that the damage to the window was caused by the contractor, rather than by some other entity, amounted to second-hand information and supposition.  The Court finds that testimony less-than-credible and concludes that Big Fish and Cowden have not carried their burden of establishing that the damage was caused by a contractor working for the HOA.

In addition, all parties agree that the work done to the exterior of the Cowden Unit was performed by an independent contractor.  Even assuming that Big Fish and Cowden had presented sufficient evidence that the damage to the window was caused by the contractor, the HOA would not be liable for the damage.  *See Johnson v. Salem Title Co.*, 246 Or. 409, 413 (1967) ("The general rule is that the employer of an independent contractor is not liable for the contractor's negligence."); *Buckel v. Nunn*, 131 Or. App. 121, 125 (1994) ("The general rule in Oregon is that one who hires an

independent contractor is not vicariously liable for the torts of that independent contractor."). This general rule is subject to certain exceptions, such as when the employer has a non-delegable duty. *Johnson*, 246 Or. at 413. Big Fish and Cowden claim that the HOA had a non-delegable duty to repair the exterior windows. However, Article 4.30 of the Covenants, Conditions, & Restriction for the Meritage HOA provide that the lot owners, rather than the HOA, are responsible for maintenance of the windows on the Units. Ex. 302, at 8. This is a notable exception to the duty of the HOA to maintain the other commonly maintained property. In the absence of sufficient proof that the damage was caused by an HOA contractor and a further showing that the HOA can and should be held liable for a tort committed by an independent contractor, the party responsible for the paying for the damaged window is the lot owner, Sue Cowden.

The Court concludes that the Receiver's objection to the claim for $5,586 by Big Fish Partners and Sue Cowden for damage to the window of the Cowden Unit is merited and that claim is rejected.

## II.    PSRG Trust Claims

PSRG Trust has presented a claim to the Receiver seeking to recover approximately $1,125,000 that PSRG Trust alleges it advanced to the HOA. PSRG Trust asserts that between January 2010 and December 2017, it loaned Meritage a net amount of $825,000, with accrued interest totaling a further $300,000. Ex. 758, at 4, 6. There were, allegedly, two types of loans: (1) advances made to pay Meritage's

operating costs during the homeowners' dues strike and (2) advances paid for window replacements in Units acquired by the HOA. *Id.* at 4-5.

As previously noted, it is the claimant's burden to establish a valid claim against the receivership estate. *Lundell*, 223 F.3d at 1039. The standard of proof is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). For the reasons discussed in the Findings of Fact, and below, the Court concludes that PSRG Trust has failed to meet its burden of establishing the existence or amount of a debt owed to it by Meritage.

### A. Promissory Notes

PSRG Trust offers the promissory notes as evidence of the existence of a debt owed by Meritage. These notes were entered into during the period in which the Court has already determined that Freitag did not have the lawful authority to control the HOA and, in addition to the obvious self-dealing involved in the notes, there is little evidence of subsequent ratification of the alleged debt.

As the declarant, Freitag exercised the powers and responsibilities of the board of directors for the HOA. ORS 94.550(10)(c). Under ORS 65.361, a transaction in which a director of a mutual benefit corporation has a conflict of interest may be approved (1) "[i]n advance by a vote of the board of directors or a committee of the board of directors if the material facts of the transaction and the director's interest were disclosed or known to the board of directors or a committee of the board of directors," or (2) "[i]f the material facts of the transaction and the director's interest were disclosed or known to the members and the members authorized, approved or

ratified the transaction." ORS 65.361(3); *see also* ORS 65.361(6) (describing the process of voting to ratify a transaction covered by ORS 65.361(3)(b)).

Here, it is undisputed that no vote took place. PSRG Trust asserts that the transactions were ratified by the Meritage homeowners by their silent acquiescence. However, Oregon law provides that for ratification to occur, there must be full knowledge of the material facts. *Alldrin v. Lucas*, 260 Or. 373, 382 (1971); *see also Philips v. Colfax*, 195 Or. 285, 296 (1952) (requiring "full knowledge of the facts" for ratification of an unauthorized contract). Here the evidence indicates that there was substantially less than "full" knowledge of the material facts of the alleged loans between PSRG Trust and Meritage. *See, e.g.,* Ex. 118 (email from a homeowner stating "I found out about the PSRG loan I think after receivership. Not sure how I could object to its terms without knowing about it. I have never signed a document to accept its terms!!"); 119 (another homeowner email stating "We were never asked or notified in any clear, comprehensible way about said loa[n]. Pure fiction."); 120 (another homeowner email stating "Is there any documentation that Kurt [Freitag] informed the homeowners about these loans and the conditions of these loans? I certainly never knew about it."); 126 (another homeowner email stating "I have no knowledge of either [the PSRG loan or deeds of trust]. There has never been any true owners meetings or allowed input or voting of any kind for the last 10+ years only threats, belittling, and domination from Kurt [Freitag].") One email from a pair of homeowners to the Receiver lays out the lack of information provided to the homeowners plainly:

> His [Freitag's] letter of March 15th stated homeowners were well aware of the loans from PSRG Trust and never objected to them. This is false. The extent of those loans were never disclosed to the homeowners until he filed his claim . . . Why were financial statements no longer provided to the homeowners after June 30, 2012? (They resumed again when you took over as Receiver in mid 2018) . . . On the last financial statement we received dated June 30, [2012] the loan balance to PSRG Trust was $205,368. His PSRG Trust claim against the HOA is $1.125M. Where is the accounting of each advance including date and amount? . . . Freitag claims the loans were partly used to replace windows in HOA owned units. There were also insurance settlements for the windows. Can he account for what was spent what was received in settlements?

Ex. 121.

What information was disclosed to the homeowners concerning the loans fell far short of providing them with "full knowledge" of all "material facts" of the loan.[2] As a result, there was no ratification of Freitag's self-dealing transaction by the homeowners.

There is also little evidence of transfers of money from PSRG Trust specifically to Meritage, as opposed to, for example, payments made by Freitag to Dallas Glass. Furthermore, even if the Court were to accept the promissory notes as *prima facie* evidence of the existence of a debt, they do not clearly establish the amount of the debt. Even on the face of the notes, they give a value of the note qualified by "or so much thereof as may from time to time be owing under this Promissory Note." The Court finds that the Couch report in particular provided valuable information and analysis in assessing the defects in the promissory notes.

---

[2] Indeed, a lack of knowledge of all material facts continues to infect this claim even in its presentation to the Court. PSRG Trust's own expert reported an inability to reconstruct the full contours of any loan between PSRG Trust and Meritage. Ex. 358.

In sum, the Court concludes that the promissory notes do not establish either the existence or the amount of a valid debt owed by Meritage to PSRG Trust.

## B. Deeds of Trust

Freitag, purporting to act on behalf of the HOA, executed deeds of trust encumbering several Meritage-owned Units, allegedly to secure debts owed by the HOA to PSRG Trust. The Receiver seeks to have these deeds of trust declared void and have the encumbered titles quieted in favor of Meritage.

The Oregon Planned Communities Act ("OPCA") provides that "a homeowner's association may sell, transfer, convey or subject to a security interest any portion of the common property if 80 percent or more of the votes in the homeowners association, including 80 percent of the votes not owned by a declarant at the time of the vote, are cast in favor of the action." ORS 94.665(1). As previously noted, the declarant was Freitag. "Common property" is defined as "any real property or interest in real property within a planned community which is owned, held or leased by the homeowners association or owned as tenants in common by the lot owners, or designated in the declaration or the plat for transfer to the association." ORS 94.550(7). This would include the HOA-owned Units. ORS 94.660 describes how votes of an HOA are to be taken for purposes of the OPCA:

(1) The vote or consent of a lot may be cast or given;

(a) In person at a meeting of the homeowners association.

(b) In the discretion of the board of directors, by absentee ballot in accordance with subsection (3) of this section.

(c) Unless the declaration or bylaws or ORS 94.550 to 94.783 provide otherwise, pursuant to a proxy in accordance with subsection (2) of this section.

(d) by written ballot in lieu of a meeting under ORS 94.550 to 94.783.

(e) By any other method specified by the declaration or bylaws or ORS 94.550 to 94.783.

ORS 94.660(1).

The Meritage Bylaws provide that homeowners "may cast votes in person, by written ballot, or by proxy." Ex. 530, at 6.

Here, the evidence and testimony presented to the Court indicate that no formal vote of the association members was ever taken with respect to the deeds of trust. Although PSRG Trust urges the Court to conclude that the members of the HOA silently ratified the deeds of trust by failing to object, the plain terms of ORS 94.665(1) require an affirmative vote and no such vote was ever taken.

In addition, the Court has previously held that Freitag lacked authority to control the Meritage HOA after the mandatory turnover in 2004. May 2018 O&O ECF No. 139. The Court observed that this ruling did "not automatically invalidate every legal decision Freitag made on behalf of Meritage from 2004 onwards." May 2018 O&O at 13. However, the placement of the deeds of trust on the units by Freitag, purporting to act for the HOA, for the benefit of PSRG Trust, an entity to which Freitag is grantor, trustee, and beneficiary, is another clear instance of self-dealing on the part of Freitag.

As discussed in the previous section, self-dealing transactions may subsequently be ratified, provided the ratification is made with full knowledge of the material facts. However, ratification for the deeds of trust fails for the same reasons it failed for the promissory notes: the homeowners were not provided with full knowledge of all material facts of the transaction.

The placement of the deeds of trust on the Units was not done according to the requirements of the OPCA. The Court therefore GRANTS the Receiver's request and declares that the deeds of trust are void, thereby quieting title to the Units in favor of Meritage.

### C. Unjust Enrichment

PSRG Trust argues in the alternative that, if it is not allowed to recover the sums allegedly advanced to Meritage under a contract or quasi-contract theory, that it should be permitted to recover under a theory of unjust enrichment.

For claims of unjust enrichment, Oregon's Supreme Court utilizes a case-by-case analysis, replacing its previous formulaic approach. *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 127-132 (2017). Courts are directed to "examine the established categories of unjust enrichment, as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Id.* at 132. Here, PSRG Trust asserts that its claim fall within an established category "where one party conferred a benefit on another but was unable to enforce an express agreement regarding payment because of a failure of proof or other obstacles to

enforcing the express agreement." *Jones v. Four Corners Rod and Gun Club*, 366 Or. 100, 119 (2020).

Unjust enrichment is an equitable doctrine. *Cumming v. Nipping*, 310 Or. App. 780, 781 (2021). As such, it is susceptible to equitable defenses, including the doctrine of unclean hands. "Recovery in restitution to which an innocent claimant would be entitled may be limited or denied because of the claimant's inequitable conduct in the transaction that is the source of the asserted liability." Restatement (Third) of Restitution and Unjust Enrichment § 63 (2011). "'Under the doctrine of unclean hands, a court may refuse to grant equitable relief to a party who has engaged in misconduct in connection with the matter for which he or she seeks relief.'" *Cumming*, 310 Or. App. at 793 (quoting *Burgdorf v. Weston*, 259 Or. App 755, 764 (2013)). "'Unconscientious conduct by a party to a controversy, in respect of and connected with the matter in dispute, disqualifies such party from seeking the aid of a court of conscience.'" *Osborne v. Nottley*, 206 Or. App. 201, 205 (2006) (quoting *McKee v. Fields*, 187 Or. 323, 326 (1949)). "The misconduct must be serious enough to justify denying relief on an otherwise valid claim—such as engaging in a crime, fraud, or bad faith—as even equity does not require saintliness." *Cumming*, 310 Or. App. at 793. However, the "inequitable conduct need not rise to illegality, and it may have as its target either the defendant or some third party." *Osborne*, 206 Or. App. at 205. "The party who stands to benefit from invocation of the unclean-hands doctrine also must prove that he or she suffered actual injury due to the alleged

misconduct." *Cumming*, 310 Or. App. at 793 (internal quotation marks and citation omitted).

Here, Freitag engaged in a flagrant course of self-dealing by purporting to enter into loans between Meritage and PSRG Trust. The alleged loans were poorly documented and what evidence is available demonstrates the Freitag commingled funds between his various entities, obscuring where money went and what money might be attributable to which entity. Freitag, who controlled both Meritage and PSRG Trust, was the individual responsible for ensuring that the necessary documentation was created and/or preserved and he failed to do so. Additionally, these loans were entered into unilaterally by Freitag during a period when, as this Court has determined, he was unlawfully exercising control over Meritage. The loans were entered into without a vote or even the full knowledge of the Meritage homeowners.

In addition, there is evidence that Freitag commingled funds from Meritage with his own funds. As the Couch report states:

> [D]uring my review of the [Meritage] bank account statements and cancelled check images, I found payments to at least 7 credit cards (e.g., TJ Maxx, Diner's Club, AMEX, Chase, Citibank, etc.). These payments often exceeded $5,000 per month. These payments stopped once the Receiver took over the account.

Ex. 136, at 13-14.

The Court concludes that PSRG Trust's inequitable conduct, through Freitag, evinces unclean hands to the detriment of Meritage. This will prevent PSRG Trust from recovering its claim under a theory of unjust enrichment.

In sum, the Court finds that the Receiver's objections to PSRG Trust's claim are merited and PSRG Trust's claim is rejected. The Court will consider the Receiver's request for attorney fees upon presentation of a petition for fees.

## CONCLUSION

For the reasons set forth above, the Receiver's Petition, ECF No. 248, is GRANTED. The claim by Big Fish Partners and Sue Cowden for damage to the window of the Cowden Unit is rejected and disallowed. The claim by PSRG Trust for money allegedly advanced to Meritage is rejected and disallowed. The deeds of trust placed on Meritage-owned properties in favor of PSRG Trust are void and title to those properties is quieted in favor of Meritage.

It is so ORDERED and DATED this 29th day of March 2024

 /s/Ann Aiken                                    
ANN AIKEN
United States District Judge