IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MERITAGE HOMEOWNERS'
ASSOCIATION, an Oregon, nonprofit
corporation,

        Plaintiff,

        v.

THE BANK OF NEW YORK MELLON, fka
The Bank of New York, as Trustee on Behalf
of the Holders of the Alternative Loan Trust
2006-0A21, Mortgage Pass Through
Certificates Series 2006-0A21,

        Defendant.

_____

THE BANK OF NEW YORK MELLON, a
Delaware corporation,

        Third-Party Plaintiff,


MERITAGE HOMEOWNERS'
ASSOCIATION, an Oregon domestic
nonprofit corporation,

        Nominal Third-party Plaintiff,

        v.

KURT FREITAG,

        Third-Party Defendant.

_____

Case No. 6:16-cv-300-MC

OPINION AND ORDER

1 – Opinion and Order

**MCSHANE, Judge:**

Plaintiff Meritage Homeowner's Association is in receivership. In February, the Receiver published his Report for December 2025 and January 2026. Based on a statement in the Report, Claimants filed a Motion to Show Cause questioning the subject-matter jurisdiction of this Court. Because Claimants' argument is superficial, misleading, and unsupported by the record, Claimants' Motion to Show Cause, ECF No. 504, is DENIED, and Claimants are responsible for Plaintiff's and Defendant's fees incurred responding to the Motion.

## BACKGROUND

This litigation, now more than ten years old, is unquestionably long in the tooth. Because the parties and the Court are familiar with the facts, the Court includes here only that which is relevant to the present motion. Additional background information can be found in ECF Nos. 119 and 491.

The Watts owned the subject property until they defaulted on their mortgage payments and declared bankruptcy in 2014. Apr. 13, 2018, Op. & Order at 3–5, ECF No. 119. In August 2015, Defendant and Third-Party Plaintiff Bank of New York Mellon ("Defendant") acquired the subject property from the Watts "free and clear of any interest" pursuant to a sale under § 363 of the bankruptcy code. *Id.* at 6; Decl. Hensrude Ex. 1, ECF No. 511-1; *id.* Ex. 2, at ¶ 8, ECF No. 511-2. Upon transfer, Defendant assumed the obligations outlined in the homeowner's association Declaration of Covenants, Conditions, and Restrictions (the "HOA agreement"). Decl. Hensrude Ex. 2, at ¶ 8. The Lincoln County Recorder's Office recorded the transaction in the County Book of Records. *Id.* Ex. 4, ECF No. 511-4. In 2018, Judge Aiken appointed Rohn Roberts as Receiver for Plaintiff Meritage Homeowner's Association. Nov. 3, 2025, Op. & Order at 3, ECF No. 491; Apr. 13, 2018, Op. & Order.

In November 2025, this Court approved a settlement agreement between Plaintiff and Defendant. Nov. 3, 2025, Op. & Order. The settlement agreement included transfer of the subject property from Defendant to Plaintiff. *Id.* at 5. The Court approved the settlement over the objections of Claimants Sue Cowden, PSRG Trust, Big Fish Partners, and Sherman Sherman Johnnie & Hoyt LLP. *Id.* at 2, 26.

In February 2026, the Receiver filed his Report for December 2025 and January 2026. Receiver's Report, ECF No. 502. Based on a statement in the Report, Claimants Sue Cowden, Dallas Glass, Big Fish Partners, and Sherman Sherman Johnnie & Hoyt LLP now bring this Motion to Show Cause why this action should not be dismissed for lack of subject matter jurisdiction. Mot. Show Cause, ECF No. 504. Claimants question Defendant's standing and, consequently, the jurisdiction of this Court over Defendant's claims.

## STANDARD

Federal Rule of Civil Procedure 12(h)(3) states, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Because subject-matter jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived." *Rainero v. Archon Corp.*, 844 F.3d 832, 841 (9th Cir. 2016) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

## DISCUSSION

Claimants' argument is as follows: Defendant bases its claims on the HOA agreement. But Defendant cannot be party to the HOA agreement unless Defendant is the "record owner" of the subject property, and Defendant is not the "record owner" of the subject property because the Receiver's Report identifies the "absence of a deed." Thus, Defendant's claims lack a proper basis, and Defendant lacks standing. Because standing is an essential element of subject-matter

3 – Opinion and Order

jurisdiction, this Court is without subject-matter jurisdiction. Mot. Show Cause at 7; *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010). While Claimants' argument might initially seem promising, it is ultimately superficial, misleading, and unsupported by the record. Defendant has standing, and this Court has subject-matter jurisdiction.

Claimants' argument misleads the court in two ways. First, Claimants cherry-pick the language of the HOA agreement to push a meaning contrary to the agreement's plain language. While Claimants argue that being the "record owner" is an essential predicate to Defendant's status as party to the agreement, the plain language of the agreement makes clear that being the "record owner" is not needed at all. Instead, being the "record owner" satisfies one of two alternative routes to being an "Owner" under the agreement. Specifically, the HOA agreement defines "Owner" as "[1] the record owner . . . of the fee simple title to any Lot or [2] a purchaser in possession of a Lot under a land sale contract." Exhibits 302–306 Ex. 302, at 7, ECF No. 310.

Defendant has submitted ample evidence to suggest that it is in fact the "record owner" of the subject property and thus the "Owner" for the purposes of the HOA agreement and standing. Defendant has submitted (1) the Watts's recorded Debtors' Certificate of Sale, (2) the Lincoln County property records, and (3) the third-party Property Detail Record. Decl. Hensrude Ex. 4; *id.* Ex. 5, ECF No. 511-5; *id.* Ex. 6, ECF No. 511-6. In contrast, Claimants' Motion is accompanied by nothing other than two briefs remarkably devoid of supporting caselaw and common sense (but long on bold text and italics).[1]

---

[1] One of the few cases cited by Claimants is *In re Elieff*, 2021 WL 4306317 (C.D. Cal. Sept. 22, 2021). Claimants argue that the bank there "tried to make the exact same argument BNYM makes here[.]" Reply at 3, ECF No. 513. But *In re Elieff* is not remotely analogous to the facts here. There, the bank "claims an interest on the Property as a result of a foreclosure sale that should not have proceeded because the default that authorized the trustee's sale had been cured." *Id.* at *4. Because the borrower was not actually in default, the trustee declined to issue a deed upon sale. Therefore, the bank lacked the presumption that it was the bona fide purchaser. Here, on the other hand, no party disputed that Defendant purchased the property. In fact, the bankruptcy court and this Court confirmed that fact. *In re Elieff* concerned a genuine dispute regarding not only the trustee's sale itself, but the underlying debt that led to the sale. This case contains a temporary technical hiccup resulting in questions from a title insurer.

4 – Opinion and Order

Even if the record were insufficient to find Defendant the "record owner," there is little doubt that Defendant is "a purchaser in possession of a Lot under a land sale contract." Defendant acquired the subject property pursuant to Bankruptcy Court authorization in 2015, and the Watts subsequently certified the sale to the Bankruptcy Court. *Id.* Ex. 2; *id.* Ex. 3, ECF No. 511-3. As Claimants' own statements allege, Defendant has been in possession of the property ever since. For example, Mark Hoyt of Claimant Sherman Sherman Johnnie & Hoyt LLP previously submitted a motion for partial summary judgment stating three separate times that Defendant owned the subject property, and Mr. Hoyt was cc'd on a September 2015 letter from counsel for Plaintiff to counsel for Defendant outlining Defendant's monetary obligations to Plaintiff under the HOA agreement. Mot. for Partial Summary Judgment at 1, 5, 27, ECF No. 50; Decl. Freitag Ex. 7, at 1, ECF No. 51. In fact, Mr. Hoyt acknowledged as much over ten years ago, when he filed the Complaint on behalf of Freitag and alleged that Defendant "became the owner of the property as of August 27, 2015 and remains in title to this day." Compl. ¶ 8, ECF No. 1. Additionally, much of Freitag's initial dispute with Defendant centered around asking this Court to order Defendant to allow Freitag into Defendant's unit to assess damage and update the plywood Defendant placed over the windows to the unit to something more to Freitag's liking. Mot. Temp. Restraining Or. at 2, ECF No. 22. There, Freitag expressly noted that "BNYM has been the undisputed owner of the unit since August 27, 2015." *Id.* The Court agrees with Defendant that Freitag's latest motion is merely the most recent example of "*10 years* of grasping at straws." Resp. at 1, ECF No. 510.

Claimants' argument is also misleading in its framing of the Receiver's Report. Claimants state: "[a]ccording to the court-appointed Receiver, there is an 'absence of a deed.' The admission requires the Court's immediate attention." Mot. Show Cause at 3. But the full excerpt of the Report tells a different story:

> [A]nissue has arisen concerning the status of insurable title to the [subject property]. Although the bankruptcy court approved the transfer of title to the subject [property] from the original owners (the Watts) to [Defendant], the title company has noted that [sic] absence of a deed confirming the transfer. Bankruptcy counsel has advised that such a deed should not be necessary, and the parties ate [sic] conferring with the title insurer in an effort to resolve the issue.

Receiver's Report at 3.

The full excerpt makes it clear that the problem identified by the Receiver is ultimately a minor one. Defendant puts it best: "[a]t most, Claimants are raising a dispute about documentation or record perfection—i.e., whether a particular form of conveyancing instrument exists or whether additional curative paperwork is necessary." Def.'s Resp. at 6, ECF No. 510.

Even if Claimants' misleading arguments had merit, the Court notes that Defendant has rightly asserted its likelihood of success in an adverse possession action. *See* Def.'s Resp. at 5. Ten years have passed since the 2015 bankruptcy-initiated transfer. During those 10 years, Defendant—and as is clear from the record, everyone else—has continued to believe in Defendant's ownership based on the objectively reasonable evidence of the Bankruptcy Court-approved sale. *See* ORS § 105.620. Defendant continues to assert ownership in its Response to Claimants' Motion. *See, e.g.,* Def.'s Resp. at 6.

Finally, nearly one decade ago, Judge Aiken confirmed that "On August 12, 2015, BNYM purchased the property through a sale under 11 U.S.C. § 363. Consistent with the that statute, BNYM acquired the property 'free and clear' of 'any interest' in the property." April 13, 2018, Op. at 6, ECF No. 119. Judge Aiken's findings and conclusions regarding Defendant's ownership are, nearly one decade later, clearly the "law of the case." Claimants make no arguments as to why that law of the case, which all parties have been relying on during the pendency of this action, should be disturbed.

6 – Opinion and Order

**CONCLUSION**

Because Claimants' argument is frivolous, their Motion to Show Cause, ECF No. 504, is DENIED and Claimants are responsible for any fees incurred in responding to the motion. The Court notes that the latest motion is on letterhead of a law firm who entered an appearance the day before filing this frivolous motion. The Court reminds these attorneys (Joseph Mabe, Keith Pitt, and Neal Schechter of the Salt law firm) that the Oregon Rules of Professional Conduct prohibit attorneys from filing frivolous motions on behalf of a client. Rule 3.1. The Court previously found that "Freitag's current goal appears to be to bully Meritage into a settlement by using protracted, costly litigation as a stick." Nov. 3, 2025, Op. at 22. Freitag's attorneys are warned that they may be held personally liable to the extent that they assist Freitag in dreaming up baseless arguments seeking to undo past decisions of not only this Court, but the Ninth Circuit, with the goal of making this as costly as possible for the opposing parties. Zealous advocacy is one thing. This motion, baldly asserting that an inadvertent mistake regarding documentation somehow nullifies a decade of expensive litigation, is another thing altogether.[2]

IT IS SO ORDERED.

---

[2] Claimants' latest briefing, in addition to being frivolous, contains arguments that veer close to being viewed as intentional attempts to mislead the Court. For example, Claimants boldly argue that "BNYM and the Reciever have timidly admitted to the Court that the settlement *cannot even be completed because BNYM lacks conveyable title to the Property*." Reply at 1, ECF No. 513 (emphasis in original). This grossly misstates the parties' arguments. Meritage argues the absence of any deed "is immaterial" and "an oversight that is certainly capable of being remedied." Pl.'s Resp. at 7. BNYM labels Claimants' motion as "frivolous litigation" and notes that Claimants do not make any challenges to jurisdiction itself, but rather "are raising a dispute about documentation or record perfection–i.e., whether a particular form of conveyancing instrument exists or whether additional curative paperwork is necessary." Def.'s Resp. at 6. Additionally, in the February 17, 2026, Report, the Receiver merely notes that although a title company pointed out the absence of a deed, "[b]ankruptcy counsel has advised that such a deed should not be necessary" and the parties hoped "to resolve the issue." Report at 3, ECF No. 502. Contrary to Claimants' bold pronouncement, nowhere do the parties imply that any technical defect poses anything other than a temporary delay of the Court-approved settlement. In addition to the Oregon Rules of Professional Conduct, the District of Oregon's Statement of Professionalism provides that attorneys "will not knowingly misstate facts or law. We will not knowing[ly] cause a person to form a mistaken conclusion of facts or law." While the Court does not expressly find that the Salt attorneys knowingly tried to mislead the Court, their arguments, on many occasions, veer dangerously close to that line.

7 – Opinion and Order

DATED this 4th day of May, 2026.

                              ___s/Michael J. McShane_____
                                   Michael J. McShane
                            United States District Judge

8 – Opinion and Order